John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse Suite
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: jnelson@milberg.com

*Attorney for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SHERI TUCKER, individually and on behalf of all others similarly situated, | **Case No.:  3:25-cv-6669** |
| Plaintiff, | **COMPLAINT – CLASS ACTION** |
| v. | |
| TEA DATING ADVICE, INC., | |
| Defendant. | |
|  | **<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Sheri Tucker ("Plaintiff") individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Tea Dating Advice, Inc. ("Tea" or "Defendant"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

**INTRODUCTION**

1.     Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII"[1] or "Private Information") that was impacted in a data breach publicly announced on July 25, 2025 (the "Data Breach" or the "Breach").

2.     Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

3.     Defendant is a "dating safely" social networking platform that caters to women and emphasizes safety, community building, and digital accountability. Defendant is headquartered in San Francisco, California.[2]

4.     Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5.     On July 25, 2025, it was reported that 72,000 images, including around 13,000 selfies or photo identifications submitted by users during account verification and approximately 59,000 images from posts, comments, and direct messages, were left entirely exposed on the

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] *Spilling the Tea on Team*, TEA, https://www.teaforwomen.com/about (last visited Aug. 6, 2025).

internet, accessible to anyone with a web browser.[3] This wasn't the result of a sophisticated cyberattack. Tea stored its most sensitive user data in a Google Firebase storage bucket configured for completely public access. Anyone who wanted could simply click and download the most sensitive personal information of women who used Tea to date safely.

6.      The Data Breach was discovered not by Tea's security team, nor by ethical hackers, but by anonymous users on 4chan—the notorious image-based bulletin board website known for harassment campaigns against women.[4]

7.      Within hours, users had created automated scripts to systematically download every image available on Defendant's Google Firebase storage bucket and created an interactive Google Maps link that overlaid pins indicating the location of Tea's users onto a map of the United States, exposing the location of women whose photos were leaked in the Data Breach.[5]

8.      Adding on to the fear of being doxxed,[6] the Data Breach led to the creation of a website where tea users could be publicly humiliated, allowing website users to browse leaked Tea user selfies and rate the photos.[7] The website even had a "Top 50" and "Bottom 50" leaderboard.

---

[3] Anthony Ha, *Dating safety app Tea breached, exposing 72,000 user images*, TECHCRUNCH (July 26, 2025), https://techcrunch.com/2025/07/26/dating-safety-app-tea-breached-exposing-72000-user-images/ (last visited Aug. 6, 2025); *Official Statement*, TEA, https://www.teaforwomen.com/cyberincident (last visited Aug. 6, 2025).

[4] Caitlin Dewey, *Absolutely everything you need to know to understand 4chan, the Internet's own bogeyman*, WASH. POST. (Sept. 25, 2014), https://www.washingtonpost.com/news/the-intersect/wp/2014/09/25/absolutely-everything-you-need-to-know-to-understand-4chan-the-internets-own-bogeyman/ (last visited Aug. 6, 2025).

[5] Saihaj Madan, *Tea App Map Goes Viral After 4chan Leak. Are Users Now Being Tracked?*, TIMES NOW (July 26, 2025), http://timesnownews.com/world/us/us-buzz/tea-app-map-goes-viral-after-4chan-leak-are-users-now-being-tracked-article-152347670 (last visited Aug. 6, 2025).

[6] "Doxxing" refers to "the collection of a user's private information, across multiple platforms (including social media) by an unauthorized individual, who then publishes the information in an attempt to shame or embarrass the user." *Personal Cybersecurity and Privacy / Preventing Doxxing*, UC BERKELEY, https://oercs.berkeley.edu/privacy/privacy-resources/personal-cybersecurity-and-privacy-preventing-doxxing (last visited Aug. 6, 2025).

[7] Austin Williams, *Tea app fallout worsens as leaked selfies used in rating site, online map*, LIVE NOW FOX (July 28, 2025), https://www.livenowfox.com/news/tea-app-breach-fallout (last visited Aug. 6, 2025).

9.      On July 25, 2025, Defendant released a public statement about the incident and launched an investigation with the assistance of third-party cybersecurity experts to determine the nature and scope of the Data Breach.[8] Defendant admits that information in its system was accessed by unauthorized individuals, though it provided little information regarding how the Data Breach occurred. Tea assured victims, though, that "[n]o email addresses or phone numbers were accessed" and "[o]nly users who signed up before February 2024[9] were affected."[10]

10.     It was later reported that it was possible that messages between users "discussing abortions, cheating partners, and phone numbers" with "messages from early 2023 until up [mid-July 2025]" were leaked.[11]

11.     In the wake of the Data Breach, Defendant took the affected systems offline and disabled its direct message functionality.[12]

12.     Upon information and belief, the following types of sensitive personal information may have been affected in the Data Breach: selfie images submitted for account verification, photo identification images, images from direct messages, publicly viewable images from posts and comments, and photos' metadata containing the location of the images.[13]

13.     To say that Defendant did not merely fail to take reasonable precautions designed to keep individuals' Private Information secure, Defendant took nearly no steps to keep its users' Private Information secure. Tea's shocking security failure handed women's identities to the very dangers they sought to avoid.

---

[8] *Official Statement*, TEA, https://www.teaforwomen.com/cyberincident (last visited Aug. 6, 2025).
[9] Though, Tea users reported that they signed up for Tea after February 2024 and had their Private Information leaked. *See, e.g.,* https://x.com/badboykrys/status/1949137908780118382; https://x.com/basedsaraconnor/status/1949188457588515248.
[10] *Official Statement*, TEA, https://www.teaforwomen.com/cyberincident (last visited Aug. 6, 2025).
[11] Lauren Forristal, *Tea app's second data breach exposed over a million private messages*, MSN (July 29, 2025), https://www.msn.com/en-us/news/technology/tea-app-s-second-data-breach-exposed-over-a-million-private-messages/ar-AA1Jwm42 (last visited Aug. 6, 2025).
[12] *Update regarding cybersecurity incident,* TEA, https://www.teaforwomen.com/cyberincident (last visited Aug. 6, 2025).
[13] Alana Wise, *Tea encouraged its users to spill. Then the app's data got leaked*, NPR (Aug. 2, 2025 1:57 PM), https://www.npr.org/2025/08/02/nx-s1-5483886/tea-app-breach-hacked-whisper-networks (last visited Aug. 6, 2025).

14. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information it collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

15. The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft. Beyond these harms, there are also public online humiliation campaigns against Tea's users of a sexist, sexual, and violent nature, and Tea's users also now face the additional potential for misuse of images to create deepfakes.

16. Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, and in contradiction to its mission to provide safety to women, failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

17. As a result of Defendant's inadequate digital security and notice process, Plaintiff's and Class Members' Private Information was exposed to anyone with a web browser. Plaintiff and the Class Members have suffered and will continue to suffer injuries, including: financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

18. Plaintiff brings this action on behalf of herself and all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

19.     Plaintiff brings this class action lawsuit on behalf of herself and all those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their Private Information had been subject to the unauthorized access by an unknown third party and precisely what specific type of information was accessed.

20.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

21.     Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

### Plaintiff

22.     Plaintiff Sheri Tucker is a citizen and resident of San Leandro, California. Plaintiff began using the Tea app in or around 2023. Plaintiff was required to provide, and did provide, her Private Information to Defendant Tea in order to use the Tea app. As a result of the Data Breach, Plaintiff's Private Information, including her driver's license information, was exposed to unauthorized third parties.

### Defendant

23.     Defendant Tea Dating Advice, Inc. is a Delaware corporation. Tea is a social networking platform that describes itself as the "go-to destination for women who want to date safely."[14] Defendant is headquartered in San Francisco, California, having its principal place of business located at 201 Spear St., Suite 1100, San Francisco, California 94105.

## JURISDICTION AND VENUE

24.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive

---

[14] *Spilling the Tea on Team*, TEA, https://www.teaforwomen.com/about (last visited Aug. 6, 2025).

of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Tea. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

25.    This Court has jurisdiction over Tea because Tea operates in and/or is incorporated in this District

26.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District, and Defendant has harmed Class Members residing in this District

## FACTUAL ALLEGATIONS

### A. Background on Defendant

27.    Defendant is "the first-ever dating safety platform" founded on a mission "to give women the tools they need to date safely in a world that often overlooks their protection."[15] These tools include background checks, reverse image searches to identify potential catfish, and sex offender and criminal record searches.[16]

28.    The app's exclusive nature—only verified women can join—added to its appeal. To join Tea, women had to provide government-issued photo identification for verification—driver's licenses, passports, state IDs—along with other sensitive information.

29.    As of July 25, 2025, Tea's social media boasted that they "officially have over 4 million women in [their] community."[17]

30.    Upon information and belief, Defendant made promises and representations to individuals, including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.[18]

---

[15] *Id.*
[16] *Home*, TEA, https://www.teaforwomen.com/ (last visited Aug. 6, 2025).
[17] @theteapartygirls, *We're so grateful you're here*, INSTAGRAM (July 24, 2025), https://www.instagram.com/p/DMf7zkeJi6U/?img_index=1 (last visited Aug. 6, 2025).
[18] *Privacy Policy,* TEA, https://www.teaforwomen.com/privacy (last visited Aug. 6, 2025).

31.    Defendant represented that it takes cybersecurity seriously and that it implements reasonable technical, administrative, and physical controls:

**Security of Your Personal Information**
The security of your Personal Information is important to us. When you enter sensitive information (such as credit card number) on our Services, we encrypt that information using secure socket layer technology (SSL). Tea Dating Advice takes reasonable security measures to protect your Personal Information to prevent loss, misuse, unauthorized access, disclosure, alteration, and destruction.[19]

32.    Defendant also assured women that the photos they submit for verification are "securely processed and stored only temporarily and will be deleted immediately following the completion of the verification process."[20] This was false.

33.    Defendant's FAQs regarding the Data Breach include, in relevant part:

**I thought the selfies were deleted?**
This data was originally archived in compliance with law enforcement requirements related to cyber-bullying prevention. At this time, we have no evidence to suggest that photos can be linked to specific users within the app.[21]

34.    Tea's claim that there is "no evidence to suggest that photos can be linked to specific users" is also false. An analysis of the Data Breach indicates that 4chan users were able to cross-reference the leaked photos and find women's social media accounts, and, in some cases, their home addresses and geolocation.[22] This information was then employed in posts that shamed, mocked, and sexualized the women in a coordinated campaign to humiliate users and "punish" women for using Tea. [23]

35.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would keep its

---

[19] *Id.*
[20] *Id.*
[21] *FAQs,* Tea, https://www.teaforwomen.com/cyberincident (last visited Aug. 6, 2025).
[22] Louisa Winters, *Spilling the Tea – Dating app data breach exposes over 72,000 women to online harassment and doxxing*, Resolver (July 29, 2025), https://www.resolver.com/blog/cyber-misogyny-tea-app-harassment-campaign/#:~:text=identifiable%20information%20(PII)%20are%20involved.%20The%20Tea,and%20images%20of%20an%20estimated%2072%2C000%20female (last visited Aug. 6, 2025).
[23] *Id.*

promises and comply with its obligations to keep such information confidential and secure from unauthorized access.

36.    Defendant had obligations created by the representations made to Plaintiff and Class Members, as well as by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA") and industry standards to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

37.    As a result of collecting and storing the Private Information of Plaintiff and Class Members for its financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties.

**B.  The Data Breach**

38.    Despite its claim that Tea was built on a belief that women "should never have to compromise their safety while dating," Defendant did not use reasonable security procedures and practices appropriate to the nature of the Private Information it maintained, causing the exposure of Plaintiff's and Class Members' Private Information.

39.    As evidenced by the Data Breach, the Private Information contained in Defendant's network was not encrypted. The Private Information was stored in one unencrypted and publicly accessible location, protected by precisely nothing.

40.    Defendant failed at the cybersecurity threshold, failing to implement the most basic security measures—including not bothering to set a password to protect its customers' Private Information.

41.    Firebase, Google's cloud platform, is actually a robust and secure service—when configured properly. Storage buckets, in particular, require developers to configure access restrictions.[24]

42.    Firebase also offers its customers templates for common scenarios, so setting proper access controls takes minutes, as well as ways to test one's security rules.

---

[24] *See Understand Firebase Security Rules for Cloud Storage*, FIREBASE, https://firebase.google.com/docs/storage/security (last visited Aug. 6, 2025).

43. Yet Defendant left its Firebase bucket configured for complete public access: no authentication was required; no access logs were put in place to track who was downloading data; and no encryption was put in place to protect the files in storage. Instead, Defendant made the data accessible through a public-facing URL that anyone with a web browser could access.

44. Multiple security experts who reviewed the Data Breach concluded that Defendant likely used AI-generated code for their Firebase implementation. The telltale signs were all there: functional code that worked but lacked basic security considerations, default configurations were left unchanged, and there was no evidence of security review or testing.

45. What is most concerning, however, is what Tea chose to allocate resources toward instead of prioritizing its customers' data security—Super Bowl ad campaigns and marketing. This "growth now, security later" strategy put women's Private Information, and those women themselves directly in harm's way.

46. The exposed data created a perfect kit for identity theft: high-resolution government IDs showing likenesses, full names, addresses, and selfie photos, many of which contained EXIF metadata that identified the location where the pictures were taken, among other sensitive information.

47. Since the Data Breach, Defendant has yet to send out letters notifying Plaintiff and Class Members of the Data Breach.

48. Plaintiff's claims arise from Defendant's failure to safeguard her Private Information and failure to provide timely notice of the Data Breach.

49. Defendant failed to take precautions designed to keep individuals' Private Information secure.

50. While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

51. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. Defendant's Failure to Prevent, Identify, and Timely Report the Data Breach**

52.    In light of the storage method for Private Information in Defendant's care, Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

53.    The Private Information that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be enticing to actors that were hostile to Defendant's users.

54.    Despite its knowledge of the inherent risks of storing data online, and notwithstanding the FTC's data security principles and practices,[25] Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard its past and present patient sensitive Private Information.

55.    The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[26] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

**D. The Harm Caused by the Data Breach Now and Going Forward**

56.    Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[27]

57.    The type of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft. Plaintiff and Class Members face a substantial risk of identity theft.

---

[25] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited Aug. 6, 2025).
[26] *Id.*
[27] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness (last visited Aug. 6, 2025).

58.     Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

59.     When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web, where malicious actors buy and sell that information for profit.[28]

60.     For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[29] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[30] As data breaches continue to reveal, "PII about employees, clients, patient and the public are housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[31]

61.     PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[32]

---

[28] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited Aug. 6, 2025).

[29] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited Aug. 6, 2025).

[30] *Id.*

[31] *Id.*

[32] *Id.*

62.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[33]

63.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[34] Defendant did not rapidly report to Plaintiff and Class Members that their Private Information had been stolen. Defendant notified impacted people several days after learning of the Breach.

64.     As a result of the Data Breach, the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

---

[33] *2019 Internet Crime Report Released*, FBI (Feb. 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion (last visited Aug. 6, 2025).
[34] *Id.*

65.     In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

66.     Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, wilfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiff's and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

67.     The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

68.     Making matters worse, the data can never be fully contained. While a breached credit card can be cancelled, the images Tea exposed will circulate forever. They're in torrent files. They're on hard drives around the world. They're in the hands of people who wish these women harm.

**E. Plaintiff Sheri Tucker's Experience**

69.     Plaintiff Tucker is a current user of Defendant's dating app who provided her Private Information to the Defendant as a condition of using the Tea Dating App. Defendant was

in possession of Plaintiff Tucker's Private Information before, during, and after the Data Breach.

70.    Plaintiff Tucker would not have allowed Defendant, or anyone in Defendant's position, to maintain her Private Information if she believed that Defendant would fail to implement reasonable and industry-standard practices to safeguard that information from unauthorized access.

71.    Plaintiff Tucker greatly values her privacy and Private Information and takes reasonable steps to maintain the confidentiality of her Private Information. Plaintiff Tucker is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

72.    Plaintiff Tucker stores any and all documents containing Private Information in a secure location and destroys any documents she receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise her identity and credit card accounts. Moreover, she diligently chooses unique usernames and passwords for his various online accounts.

73.    As a result of the Data Breach, Plaintiff Tucker has spent several hours researching the Data Breach and other necessary mitigation efforts. This is valuable time that Plaintiff Tucker spent at Defendant's direction and that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

74.    As a consequence of and following the Data Breach, Plaintiff Tucker has experienced a significant uptick in spam calls, SMS, and emails.

75.    Plaintiff Tucker anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Tucker will continue to be at present and continued increased risk of identity theft and fraud for years to come.

76.    Plaintiff Tucker has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

77.    As a direct and traceable result of the Data Breach, Plaintiff Tucker suffered actual

injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to:

    a. lost time and money related to monitoring her accounts and credit reports for fraudulent activity;

    b. loss of privacy due to her Private Information being accessed and stolen by cybercriminals;

    c. loss of the benefit of the bargain because Defendant did not adequately protect her Private Information;

    d. emotional distress because identity thieves now possess her first and last name, paired with her other sensitive information;

    e. imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web;

    f. diminution in the value of his Private Information, a form of intangible property that Defendant obtained from Plaintiff Tucker; and

    g. other economic and non-economic harm.

## CLASS ALLEGATIONS

78.    Plaintiff brings this class action, individually and on behalf of the following Nationwide Class:

**Nationwide Class**

Individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach reported by Defendant on or around July 25, 2025 (the "Class").

**California Subclass**

Individuals residing in the State of California whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach reported by Defendant on or around July 25, 2025 (the "California Subclass").

79.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons

or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

80.    Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

81.    This action may be certified as a class action under because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

82.    <u>Numerosity</u>: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

83.    <u>Typicality of Claims</u>: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members, which was caused by the same misconduct by Defendant.

84.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

85.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

86.   <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

   a.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

   b.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

   c.   Whether Defendant's storage of Plaintiff's and Class Members' Private Information was done in a negligent manner;

   d.   Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Private Information;

   e.   Whether Defendant's conduct was negligent;

   f.   Whether Defendant's conduct violated Plaintiff's and Class Members' privacy;

   g.   Whether Defendant's conduct violated the statutes as set forth herein;

   h.   Whether Defendant took sufficient steps to secure its past and present patients' Private Information;

   i.   Whether Defendant was unjustly enriched; and

   j.   The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

87.   Information concerning Defendant's policies is available from Defendant's records.

88.   Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

89.   The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct

for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

90.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

91.    Given that Defendant had not indicated any changes to its conduct or security measures, monetary damages are insufficient, and there is no complete and adequate remedy at law.

## CAUSES OF ACTION
### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

92.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 21 and paragraphs 27 through 77 as though fully set forth herein.

93.    Plaintiff brings this claim individually and on behalf of the Class Members.

94.    Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

95.    Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

96.    Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' Private Information within its possession was compromised, and precisely the types of information that were compromised.

97.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its

systems and networks, and the personnel responsible for them, adequately protected its current and former patient Private Information.

98.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patient. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

99.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

100.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

101.    The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

      a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

      b.  Failing to adequately monitor the security of its networks and systems; and

      c.  Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

102.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

103.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent the dissemination of Plaintiff's and Class Members' Private Information.

104.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendant's possession might have been compromised, and precisely the type of information compromised.

105.     Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Members' Private Information. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the personal patient information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

106.     It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

107.     It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would result in injuries to Plaintiff and Class Members.

108.     Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised.

109.     But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

110.     Given Defendant's failures to implement the proper systems, as defined above, even knowing the ubiquity of the threat of data breaches, Defendant's decision not to invest enough time and resources in its cyber defenses amounts to gross negligence.

111.     As a result of Defendant's failure to timely notify Plaintiff and Class Members that their Private Information had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

112.     As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the

possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

## COUNT II
## NEGLIGENCE *PER SE*

### (On Behalf of Plaintiff and the Class)

113.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 21 and paragraphs 27 through 77 as though fully set forth herein.

114.    Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

115.    Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with industry standards.

116.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored, and the foreseeable consequences of a data breach on Defendant's systems.

117.    Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

118.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

119.    As a result of Defendant's negligence *per se*, Plaintiff and Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing, and correcting the current and future consequences of the Data Breach.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

120.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 21 and paragraphs 27 through 77 as though fully set forth herein.

121.    Plaintiff and Class Members conferred a benefit upon Defendant by using Defendant's consulting services and/or being employed by Defendant.

122.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's and Class Members' Private Information, as this was used for Defendant to administer its services to Plaintiff and the Class.

123.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' services and their Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class would not have provided their Private Information to Defendant or utilized its services had they known Defendant would not adequately protect their Private Information.

124.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

## COUNT IV
## BREACH OF CONTRACT
### (On behalf of Plaintiff and the Class)

125.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 21 and paragraphs 27 through 77 as though fully set forth herein.

126.     Plaintiff and Class Members entered into a valid and enforceable contract through which they provided their Private Information and/or paid money to Defendant in exchange for services. That contract included promises by Defendant to secure, safeguard, and not disclose Plaintiff's and Class Members' Private Information.

127.     Defendant's Terms of Use expressly incorporate Defendant's Privacy Policy, which memorializes the rights and obligations of Defendant and its customers, beneficiaries, employees, agents, and other individuals in its U.S. business. Defendant's Terms of Use and Privacy Policy were provided to Plaintiff and Class Members in a manner in which it became part of the agreement for Defendant's services.

128.     In the Privacy Policy, Defendant commits to protecting the privacy and security of private information and promises to never share Plaintiff's and Class Members' Private Information except under certain limited circumstances, inapplicable here. Defendant further expressly promises that photos users submit for verification purposes are "securely processed and stored only temporarily and will be deleted immediately following the completion of the verification process."

129.     Plaintiff and Class Members fully performed their obligations under their contracts with Defendant.

130.     However, Defendant did not secure, safeguard, and/or keep private Plaintiff's and Class Members' Private Information. Defendant did not securely process and store Plaintiff's and Class Members' verification photos, and did not delete them immediately following the

completion of the verification process. Therefore, Defendant breached its contracts with Plaintiff and Class Members.

131. Defendant allowed third parties to access, copy, and/or exfiltrate Plaintiff's and Class Members' Private Information without Plaintiff's and Class Members' permission. Therefore, Defendant breached the Privacy Policy with Plaintiff and Class Members.

132. Defendant's failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA and applicable industry standards, resulted in Defendant providing to Plaintiff and Class Members services that were of a diminished value.

133. As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein, including in Defendant's failure to fully perform its part of the bargain with Plaintiff and Class Members.

134. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

135. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide credit monitoring and identity theft insurance to Plaintiff and Class Members for a period of ten years.

**COUNT V**
**INVASION OF PRIVACY**
**PUBLIC DISCLOSURE OF PRIVATE FACTS**
**(On Behalf of Plaintiff and the Class)**

136. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 21 and paragraphs 27 through 77 as though fully set forth herein.

137. Plaintiff and Class Members took reasonable and appropriate steps to keep their Private Information confidential from the public.

138. Plaintiff's and Class Members' efforts to safeguard their own Private Information were successful until Defendant failed to protect the same.

139.    Plaintiff and Class Members had a legitimate expectation of privacy as to their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

140.    Defendant owed a duty to the individuals for whom it collected Private Information, including Plaintiff and Class Members, to keep their Private Information confidential.

141.    The unauthorized release of Private Information is highly offensive to any reasonable person.

142.    Plaintiff's and Class Members' Private Information is not of legitimate concern to the public.

143.    Defendant knew or should have known that Plaintiff's and Class Members' Private Information was private, as any reasonable person would.

144.    Defendant caused the publication of Plaintiff's and Class Members' Private Information by failing to implement reasonable cybersecurity measures while being substantially certain that such a failure would lead to a data breach.

145.    Indeed, such substantial certainty is clear given the ubiquity of data breaches.

146.    Moreover, the disclosure meets the definition of a publication because the disclosure was made to the exact people from whom cybersecurity measures are meant to protect Plaintiff and the Class—such that they are in a special relationship with Plaintiff and the Class.

147.    By intentionally failing to keep Plaintiff's and Class Members' Private Information safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiff's and Class Members' privacy by:

      a.    Intentionally and substantially intruding into Plaintiff's and Class Members' private affairs in a manner that identifies Plaintiff and Class Members and that would be highly offensive and objectionable to an ordinary person;

      b.    Intentionally publicizing private facts about Plaintiff and Class Members, which is highly offensive and objectionable to an ordinary person; and

1    c.   Intentionally causing anguish or suffering to Plaintiff and Class Members.

2    148.   As the Restatement explains, as used throughout the Restatement of Torts, intent

3  "has reference to the consequences of an act rather than the act itself." Restatement (Second) of

4  Torts § 8A, cmt. A (1964). "Intent is not, however, limited to consequences which are desired. If

5  the actor knows that the consequences are certain, or substantially certain, to result from his act,

6  and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." *Id.*

7  cmt. B.

8    149.   Indeed, given the foreseeability of the harms inherent in data breaches and the

9  ubiquitous nature of data breaches, Defendant was substantially certain that their failure to

10  implement reasonable cybersecurity standards would lead to an invasion of Plaintiff's privacy.

11    150.   Defendant knew that an ordinary person in Plaintiff's or Class Members' position

12  would consider the exposure of their Private Information to be highly offensive and objectionable.

13    151.   Defendant invaded Plaintiff's and Class Members' right to privacy and intruded

14  into Plaintiff's and Class Members' private affairs by intentionally misusing and/or disclosing

15  their Private Information without their informed, voluntary, affirmative, and clear consent.

16    152.   Unless and until enjoined and restrained by order of this Court, Defendant's

17  wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class

18  Members in that Defendant's inadequate data security measures will likely result in additional

19  data breaches. Plaintiff and Class Members have no adequate remedy at law for the injuries that

20  they will sustain in that a judgment for monetary damages will not prevent further invasions of

21  Plaintiff's and Class Members' privacy by Defendant.

**COUNT VI**
**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

25    153.   Plaintiff incorporates by reference and re-alleges each and every allegation set

26  forth above in paragraphs 1 through 21 and paragraphs 27 through 77 as though fully set forth

27  herein.

28    154.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

155.     Defendant violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

156.     Defendant's "unfair" acts and practices include:

157.     Defendant failed to implement and maintain reasonable security measures to protect Plaintiff's and Subclass Members' Private Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

158.     Defendant failed to identify foreseeable security risks, remediate identified security risks, and sufficiently improve security following previous cybersecurity incidents, as described herein. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and Subclass Members, whose Private Information has been compromised.

159.     Defendant's failure to implement and maintain reasonable security measures was also contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code § 1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100;

160.     Defendant's failure to implement and maintain reasonable security measures also resulted in substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not have known of Defendant's inadequate security, consumers could not have reasonably avoided the harms that Defendant caused.

161.     Defendant engaged in unlawful business practices by violating Cal. Civ. Code § 1798.82.

162.     Defendant has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), the FTC Act, 15 U.S.C. § 45, and California common law.

163.     Defendant's unlawful, unfair, and deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Class Member Private Information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' Private Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; and

f. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Consumer Privacy Act, Cal. Civ. Code § 1798.100, California's Consumer Records Act, Cal. Civ. Code § 1798.80, et seq., and § 1798.81.5, which was a direct and proximate cause of the Data Breach.

164. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of individuals' Private Information.

CLASS ACTION COMPLAINT

165.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members were injured and suffered monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendant's services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

166.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair and unlawful business practices or use of their Private Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT VII
## CALIFORNIA CONSUMER RECORDS ACT
### Cal. Civ. Code §§ 1798.80, et seq.
### (On Behalf of Plaintiff and the California Subclass)

167.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 21 and paragraphs 27 through 77 as though fully set forth herein.

168.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information [PII] from unauthorized access, destruction, use, modification, or disclosure."

169.    Defendant is a business that owns, maintains, and licenses personal information (or "PII"), within the meaning of Cal. Civ. Code §§ 1798.80(a) and 1798.81.5(b), about Plaintiff and Class Members.

170.    Businesses that own or license computerized data that includes PII are required to notify California residents when their PII has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of personal information [PII] that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

171.    Defendant is a business that owns or licenses computerized data that includes "personal information" [PII] as defined by Cal. Civ. Code § 1798.80.

172.    Plaintiff's and Class Members' PII includes "personal information" as covered by Cal. Civ. Code § 1798.82.

173.    Because Defendant reasonably believed that Plaintiff's and Class Members' PII was acquired by unauthorized persons during the Data Breach, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

174.    Defendant failed to fully disclose material information about the Data Breach in a timely manner.

175.    By failing to disclose the Data Breach in a timely manner, Defendant violated Cal. Civ. Code § 1798.82.

176.    As a direct and proximate result of Defendant's violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff and Class Members suffered damages, as described above.

177.    Plaintiff and the Class Members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

178.    Plaintiff and the Class Members were injured and have suffered damages, as described above, from Defendant's illegal and unauthorized disclosure and negligent release of their Private Information in violation of Cal. Civ. Code §§56.10 and 56.101, and therefore seek relief under Civ. Code §§ 56.35 and 56.36, which allows for actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorneys' fees, expenses, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and her counsel as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the laws referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For damages in amounts to be determined by the Court and/or jury;

(e)    For an award of statutory damages or penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

(h)    For an order of restitution and all other forms of monetary relief; and

(i)    Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

*[SIGNATURE BLOCK ON FOLLOWING PAGE]*

CLASS ACTION COMPLAINT

Dated: August 6, 2025

By: */s/ John J. Nelson*
John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse Suite
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: jnelson@milberg.com

Mark S. Reich*
Melissa G. Meyer*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: mmeyer@zlk.com

*Attorneys for Plaintiff and the Proposed Class*

**pro hac vice* forthcoming